**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00914-CMA-KLM

BENJAMIN L. GERIG,
a Colorado resident,

Plaintiff,

v.

UNIVERSITY OF DENVER,
a Colorado non-profit corporation,

Defendant.

---

# SCHEDULING ORDER

---

## 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

The Scheduling Conference is scheduled for July 26, 2019, at 10:00 a.m. The Conference will be held before Magistrate Judge Kristen L. Mix in Courtroom A-401, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.

Plaintiff, Benjamin L. Gerig ("Mr. Gerig"), is represented by:

Jeanine Anderson
Richard Barkley
Anderson Barkley, LLC
3900 E. Mexico Ave., Suite 300
Denver, Colorado 80210
(720) 506-1766
jeanine@andersonbarkleylaw.com
richard@andersonbarkleylaw.com

Defendant, University of Denver ("DU" or the "University") is represented by:

Jim Goh
Renee Sheyko
Constangy Brooks, Smith & Prophete LLP
Dominion Towers
600 17th Street, Suite 2700-S
Denver, Colorado 80202
(720) 343-7533
jgoh@constangy.com
rsheyko@constangy.com

## 2. STATEMENT OF JURISDICTION

This Court has jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the laws of the United States. (*See* Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 *et seq.*)

## 3. STATEMENT OF CLAIMS AND DEFENSES

a. Plaintiff:

Mr. Gerig brings claims for disability discrimination and retaliation in violation of the ADA. Mr. Gerig suffers from a condition known as Seasonal Affective Disorder ("SAD"), a type of depression where symptoms are triggered and aggravated by a lack of natural sunlight. Mr. Gerig was medically diagnosed with SAD in 2000 by a psychiatrist named Dr. Norman Rosenthal. Since the time he was first diagnosed, Mr. Gerig has managed his condition through a combination of medicine, exercise, light therapy, and constant personal effort to ensure that he receives regular exposer to natural sunlight.

Mr. Gerig began his employment at the University in 2012, and in July 2016, he accepted a new position at the Daniels College of Business ("Daniels") doing business and program development. When he first began his position at Daniels, he was assigned his own office space in the Joy Burns Building. Like many of the available offices in the Joy

Burns Building, Mr. Gerig's office space had an external window that provided him with the requisite sunlight he needed to combat the symptoms of his SAD. Because he always had a work space near an external window, and exposure to natural light was never an issue, Mr. Gerig did not notify his new supervisors of his disability when he initially accepted the position at Daniels. In April 2017, as part of an office change for his team, Mr. Gerig was reassigned to an office without any external windows. At all times, Mr. Gerig put effort into ensuring that the lack of natural light and his condition would not negatively affect his work performance, with reasonable success. From July 2016 through early August 2017, Mr. Gerig received good reviews from his supervisors and was well-regarded by his colleagues. For example, around June 2017, Mr. Gerig's work performance was positively rated in the range of 7.7 to 8.7 out of a scale of 10, in a comprehensive review known as the 360-Degree Feedback Report.

Unfortunately, everything changed in August 2017. On or about August 18, 2017, Mr. Gerig sent a formal request for an accommodation of an office with external windows to his supervisors: Kelsey Johnson, the Director of Executive Education at Daniels, and Kevin Cuthbert, who was Ms. Johnson's supervisor. In his request, Mr. Gerig explained his SAD and the symptoms he suffers if he does not receive an adequate amount of natural light on a daily basis. On or about August 28, 2017, Mr. Gerig met with Ms. Johnson and Mr. Cuthbert to discuss his request for an accommodation, and his supervisors assured him that they would "explore options" for addressing his disability and left it at that. During that same meeting, the focus then shifted, rather suddenly, to a barrage of criticisms of Mr. Gerig's work performance and an itemization of Mr. Gerig's various failings: from his failure

to correctly prepare a "Scope of Work" for a client to his inability to comply with the subjective criteria of being sufficiently curious. Mr. Gerig thought the August 28th meeting was held to address his request for an accommodation and was obviously shocked and surprised by this unanticipated turn of events. In spite of this, Mr. Gerig responded to the criticisms with professionalism and positivity by acknowledging any past mistakes and promising to make more of an effort and show more curiosity in the future. Mr. Gerig hoped he could return to the good working relationship he had with his supervisors prior to his request for accommodations, but sadly, things began to deteriorate. Following the August 28, 2017 meeting, Mr. Gerig began being treated poorly by his supervisors – he would receive instructions from Ms. Johnson that changed his job duties and expectations on an almost weekly basis, and Ms. Johnson repeatedly asked Mr. Gerig if he had "thought carefully about whether or not [he] should be doing this work" and how Mr. Gerig should "think really hard if this is the right job for [him]." Mr. Gerig felt like his work environment was becoming increasingly hostile.

Mr. Gerig's request for an office with an external window was officially denied on or about September 11, 2017, with the reason being that moving him to an office with a window would create separation between Mr. Gerig and the rest of his team. Because of the denial, Mr. Gerig attempted to compromise his disability with the unwillingness of his supervisors to accommodate by accepting Ms. Johnson's offer to purchase and install a light box at his desk. Unfortunately, the light box did not provide enough natural light and had no impact on the symptoms caused by his SAD. In the following months, Mr. Gerig reached out to the HR department at the University to submit a complaint of retaliation and

again requesting reasonable accommodations. After several meetings with HR and his supervisors, and after obtaining and submitting various forms and explanations of his disability, on November 13, 2017, the University finally granted his request and allowed him to move to a vacant office with a window. Three days after the request for an accommodation was granted, on November 16, 2017, he was called into a meeting with Ms. Johnson and Mr. Cuthbert. During that meeting, Ms. Johnson and Mr. Cuthbert informed Mr. Gerig that they no longer feel that he is a good fit for his position and that Mr. Gerig should think hard about whether he wanted to be there. Mr. Gerig's supervisors then proceeded to threaten him with termination in January 2018 or the alternative of taking a "buy out" of his salary through December 2017 if he left immediately. Mr. Gerig rejected their offer and responded by stating that he sincerely wanted to stay and perform his duties to the best of his abilities because he loved what he did and he needed the job to support himself and his wife and to pay for the new home he recently purchased. Approximately three weeks later, on or about December 6, 2017, Mr. Gerig received a "Final Written Warning," which he attempted to rebut, but his rebuttal fell on deaf ears. On December 22, 2017, Mr. Gerig requested an investigation by the University's Equal Opportunity Office into discriminatory conduct against him. Eleven days following his request, Mr. Gerig was summarily discharged by Mr. Cuthbert, Ms. Johnson and a University HR representative on January 2, 2018.

b. Defendant: DU denies that it discriminated against Plaintiff on the basis of disability or any other status protected under any federal, state, or local law, and denies that it retaliated against Plaintiff. To the contrary, DU made substantial efforts to

accommodate Plaintiff's needs based on his report that he suffers from SAD. On August 18, 2017, Plaintiff informed his supervisors for the first time that he suffers from SAD and requested an accommodation. Plaintiff and his supervisors engaged in the interactive process to discuss his alleged limitations and potential accommodations. After being offered numerous options, including reassignment to a desk facing large external windows, use of a sun lamp (an option that was suggested by Plaintiff due to the fact that he effectively used a sun lamp at home), use of the conference room (with external windows) and other offices (with external windows) anytime when not in use, and the option to take frequent breaks to spend time outside, Plaintiff elected the sun lamp option. Plaintiff's supervisors promptly purchased a sun lamp for use in Plaintiff's office, and permitted him to use conference rooms and offices with external windows when available and the option to take breaks outside whenever Plaintiff needed. When Plaintiff's supervisors later learned that these options had not been satisfactory to Plaintiff, Plaintiff's supervisors permitted him to relocate his office to an office with external windows, which was outside of the department's office suite. DU made every reasonable effort to engage with Plaintiff regarding his alleged disability and provided numerous accommodations.

The discipline and coaching that ultimately led to Plaintiff's termination were completely unrelated to Plaintiff's disability and requests for accommodation. From an early time in his role as Program Developer, Plaintiff displayed performance deficiencies. When these deficiencies did not improve over time with training and coaching, Plaintiff expressed to his supervisor, Kelsey Johnson, that he did not feel successful in the role and that he had begun seeking other positions within DU. Plaintiff was not meeting the objective

standards set by his supervisors for business development, outreach, and project proposals. These failures were communicated to Plaintiff verbally on a regular basis (before and after he notified his supervisors of his SAD) and in a series of written warnings, including a designation of "Improvement Required" in his annual review. Despite these warnings, Plaintiff's performance, both in terms of quantity and quality, did not improve, leading to his termination on January 2, 2018.

DU reserves all rights to continue to assert the defenses contained in its Answer to Plaintiff's Complaint and to add or modify its defenses as discovery progresses.

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1. Mr. Gerig accepted a full-time Public Relations position at the University in February 2013.

2. In July 2016, Mr. Gerig accepted a new job as a Program Developer doing business and program development in the Executive Education Program within DU's Daniels College of Business.

3. Mr. Gerig was discharged by the University on January 2, 2018.

## 5. COMPUTATION OF DAMAGES

Plaintiff:

1. Back pay, including but not limited to wages, salaries, bonuses, and benefits, to be adjusted for tax consequences of receiving a lump-sum back pay in a single year;

Π shall file a supplement to this section regarding lost back pay to date, on or before August 2, 2019.

2. Reinstatement and restoration of benefits;
3. Front pay;
4. Compensatory damages recoverable under the ADA;
5. Pre- and post-judgment interest at the statutory rate;
6. Under the ADA, costs, expenses, and attorney fees incurred in connection with this action;
7. Punitive damages;
8. Affirmative relief such as expunging adverse material from Mr. Gerig's personnel files, and providing positive letters of recommendation;
9. Equitable relief, not otherwise requested specifically; and
10. Such other and further relief as this Court deems just and proper.

Defendant: DU does not presently seek any damages against Plaintiff but will seek the recovery of its reasonable attorneys' fees and costs incurred in the defense of this action.

## 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a. Date of Rule 26(f) meeting: June 18, 2019.

b. Names of each participant and party he/she represented. The participants were:

Richard P. Barkley, representing Plaintiff, Mr. Gerig

Renee Sheyko, representing Defendant, the University.

c. Statement as to when Rule 26(a)(1) disclosures were made or will be made:

Absent any change, disclosures will be made on July 2, 2019, fourteen days following the Rule 26(f) conferral meeting.

d. Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1): None.

e. Statement concerning any agreements to conduct informal discovery:

To date, the parties have not agreed on any specific method of discovery but will consider informal discovery as the case progresses and discovery issues arise.

f. Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

The parties have discussed the possibility of ways to reduce discovery or other litigation costs. The parties will prepare a single, joint list of exhibits, utilizing the form exhibit list posted through the "Judicial Officers' Procedures" link on the District of Colorado's home page. Parties shall use a unified exhibit numbering system for deposition exhibits.

If issues raised in this case are likely to require a large number of witnesses, the parties will consider using telephone interviews or telephone depositions to reduce the burden on the witness and the parties and the costs of the deposition.

g. Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

The parties have discussed the need for electronically stored information ("ESI") and do not believe the claims for relief in this case are likely to involve any extensive ESI. At present, the parties do not believe that the ESI that will be sought will be difficult or costly

to retrieve, and they do not anticipate the need to limit discovery based on discovery cost or delay. The parties agree to seek a balance in regard to the burden of ESI production pursuant to the Civil Rules. The parties agree that ESI will be produced in native format when appropriate. The parties agree that ESI and paper documents that concern the claims and defenses will be preserved until this dispute is resolved.

The data that is relevant to this case is, with the exception of a limited number of documents, unlikely to implicate the attorney-client privilege or work product immunity. The parties will provide a privilege log for documents they have declined to produce based on any privilege or immunity. If any documents that are protected from disclosure by a privilege or immunity are inadvertently produced, the documents will be returned to the producing party, and the documents will not be used for any purpose in this action. See Addendum.

h. Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The parties have discussed the possibility of settlement and mediation. The parties have agreed to engage in mediation or revisit settlement discussions after completing the exchange of the first set of discovery requests and responses.

## 7. CONSENT

The parties do not consent to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

a. Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

None. The parties reserve their rights to request additional depositions upon a showing of good cause. 10 depos per side, including experts 25 rogs per side

b. Limitations which any party proposes on the length of depositions.

Seven hours (to be taken over the course of one day). The parties reserve their rights to request an enlargement of time upon a showing of good cause.

c. Limitations which any party proposes on the number of requests for production and/or requests for admission.

Twenty-five requests for production per side and twenty-five requests for admission per side, subject to enlargement for good cause shown.

d. Other Planning or Discovery Orders

No opposed discovery motions are to be filed with the Court until the parties comply with D.C.COLO.LCivR. 7.1(a). If the parties are unable to reach agreement on a discovery issue after conferring, they shall arrange a telephone hearing with Magistrate Judge Mix regarding the issue. Both of these steps must be completed before any contested discovery motions are filed with the Court. See Addendum.

Because discovery will necessarily implicate private information, the parties have agreed in principle to a protective order to prevent the public disclosure of private information. The parties will submit a protective order to the Court for approval within fifteen days from the date of the Scheduling Conference.

## 9. CASE PLAN AND SCHEDULE

a. Deadline for Joinder of Parties and Amendment of Pleadings: 60 days after the Scheduling Conference, September 23, 2019.

b. Fact Discovery Cutoff: February 14, 2020.

c. Expert Discovery Cutoff: March 16, 2020.

d. Rebuttal Expert Discovery Cutoff: April 15, 2020.

e. Dispositive Motion Deadline: 60 days after close of fact discovery, April 14, 2020.

f. Expert Witness Disclosures:

1. Mr. Gerig anticipates at present that he will designate an economic expert, as well as rebuttal experts, if necessary. Mr. Gerig reserves the right to designate another expert should the need arise.

Defendant: DU does not anticipate the need for expert testimony at this time, but reserves all rights to designate experts should the need arise.

2. Limitations which the parties propose on the use or number of expert witnesses.

The parties propose that the number of expert witnesses be limited to two plus rebuttal experts. The parties agree that if one party wish to use more than two expert witnesses, that party shall make a good faith effort to confer with the other party and request, by motion, that the Court allow them the use of additional expert witnesses.

Parties are limited to one expert witness per area of expertise.

3. The parties shall designate all affirmative testifying experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2), on or before ~~March 16, 2020.~~ February 3, 2020

4. The parties shall designate all rebuttal experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before ~~April 15, 2020.~~ February 24, 2020

e. Identification of Persons to Be Deposed:

Plaintiffs:

1. Fed. R. Civ. P. 30(b)(6) witnesses to testify on behalf of the University (estimated time: seven hours).

2. Fact witnesses necessary to preserve testimony.

3. Defendants' expert(s).

4. Other witnesses whose identities are discovered through discovery.

Defendant:

1. Plaintiff (estimated time: seven hours).

DU reserve the right to depose additional witnesses as disclosures and discovery proceed.

f. Deadline for Interrogatories:

Interrogatories must be served no later than ~~30~~ 45 days before the discovery cut-off.

g. Deadline for Requests for Production of Documents and/or Admissions

Requests for Production of Documents and/or admissions must be served no later than ~~30~~ 45 days before the discovery cut-off.

**10. DATES FOR FURTHER CONFERENCES**

a. Status conferences will be held in this case at the following dates and times: As needed.

b. A final pretrial conference will be held in this case on September 8, 2020 at 10 o'clock a m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a. Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

None.

b. Anticipated length of trial and whether trial is to the court or jury.

Four days to a jury.

c. Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, 103 Sheppard Drive, Durango, Colorado 81303-3439.

None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

**13. AMENDMENTS TO SCHEDULING ORDER**

This Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this 26th day of July, 2019.

BY THE COURT:

United States Magistrate Judge
Kristen L. Mix

APPROVED:

*/s/ Jeanine M. Anderson*
Jeanine M. Anderson
Anderson Barkley, LLC
3900 E. Mexico Ave., Suite 300
Denver, Colorado 80210
(720) 506-1766

*Attorneys for Plaintiff*

*/s/ Renee Sheyko*
Renee Sheyko
Constangy Brooks, Smith & Prophete LLP
Dominion Towers
600 17th Street, Suite 2700-S
Denver, Colorado 80202
(720) 343-7533

*Attorneys for Defendant*

Civil Action No. 19-cv-914-CMA-KLM

## ADDENDUM TO SCHEDULING ORDER

IT IS HEREBY **ORDERED** as follows:

1. The parties shall adhere to the Sedona Principles regarding disputes relating to electronic discovery. See www.thesedonaconference.org.

2. The discovery cut-off date is the deadline for completing discovery *and* the deadline for making discovery motions.

3. The parties shall file a proposed Order under F.R.E 502(d) on or before August 2, 2019.

4. The parties shall file a joint status report explaining in detail their efforts to settle the case on or before April 1, 2020.

5. All discovery motions shall be made in compliance with Magistrate Judge Mix's discovery procedures. See www.cod.uscourts.gov.

Dated: July 26, 2019

Kristen L. Mix
United States Magistrate Judge