**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00914-CMA-KLM

BENJAMIN L. GERIG,
a Colorado resident,

Plaintiff,

v.

UNIVERSITY OF DENVER,
a Colorado non-profit corporation,

Defendant.

---

**~~PROPOSED~~ FINAL PRETRIAL ORDER**

---

## 1. DATE AND APPEARANCES

The Final Pretrial Conference is scheduled for September 15, 2020, at 10:00 a.m., via telephone conference before Magistrate Judge Kristen L. Mix.

Plaintiff, Benjamin L. Gerig ("Mr. Gerig"), is represented by:

Jeanine M. Anderson
Richard P. Barkley
Anderson Barkley, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
(720) 506-1766
jeanine@andersonbarkleylaw.com
richard@andersonbarkleylaw.com

Defendant, University of Denver, (the "University"), is represented by:

Jim Goh
E. Rayner Mangum

Constangy, Brooks, Smith & Prophete, LLP.
600 17th Street, Suite 2700s
Denver, Colorado 80202
jgoh@constangy.com
rmangum@constangy.com

## 2. JURISDICTION

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the claim brought by Plaintiff arises under the laws of the United States. *See* Americans with Disabilities Act of 1990, 42 U.S.C.A. §§ 12101-12117 ("ADA").

## 3. CLAIMS AND DEFENSES

A. *Factual Explanation of Plaintiff's Claims of Discrimination*:

This action alleges claims of discrimination and retaliation under the Americans with Disability Act of 1990, 42 U.S.C.A. §§ 12101-12117. Mr. Gerig suffers from Seasonal Affective Disorder (the "Disorder"), a syndrome that is characterized by recurrent depressions that occur annually at the same time each year. If not treated, its symptoms may include: depression, lack of interest, sleeping difficulties, low energy, sluggishness, difficulty concentrating, changes in appetite or weight, feelings of hopelessness or worthlessness, and thoughts of death or suicide. Depression brought on by the Disorder usually occurs during the autumn and winter months of the year, and can be managed with medicine, exercise, therapy, and regular exposure to natural sunlight.

Mr. Gerig began suffering symptoms from the Disorder as early as 1996, and was first diagnosed with the disability by a psychiatrist in 2000. In 2007, Mr. Gerig moved to Colorado because of its climate. In May 2012, Mr. Gerig received his Masters of Arts

Degree in Journalism and Mass Communication from the University of Colorado. The following year, in February 2013, Mr. Gerig accepted a full-time Public Relations position at DU, eventually transferring into DU's Marketing and Communications Department ("Marketing") in July of 2013, where he worked until July 2016. During the time he worked for Marketing, Mr. Gerig was given an office with an external window. Throughout his employment with Marketing, he received consistently positive reviews for his work performance.

In July 2016, Mr. Gerig was hired for a new position at the Daniels College of Business ("Daniels"), where he began doing business and program development for the Office of Executive Education. At the beginning, Mr. Gerig was given an office with external windows. In April 2017, however, as part of an office/suite relocation, Mr. Gerig was moved into an office that lacked any external windows.

His first year at Daniels, Mr. Daniels continued to receive positive reviews for his work. For instance, in June 2017 Mr. Gerig received a comprehensive performance review titled the 360-Degree Feedback Report (the "Feedback Report"). In the Feedback Report, Mr. Gerig's co-workers and supervisors reviewed him in twelve categories. Mr. Gerig received positive ratings from the Feedback Report

In July and August 2017, Mr. Gerig began to have symptoms that he knew from past experience were early signs of an episode of the Disorder. His energy was dropping and he was becoming mildly depressed. It felt hard to handle some additional projects he had been given due to the resignation of other employees. Mr. Gerig believed he was

still functioning well at work. Nonetheless, he was concerned that if he proceeded further into the fall season, the quality of his work would suffer.

On August 18, 2017, Mr. Gerig sent an email to his supervisors, Kelsey Johnson and Kevin Cuthbert (the "Supervisors"), requesting an accommodation of moving to an empty office a short way down the hall that had an external window. The email stated in pertinent part:

> Kelsey and Kevin,
> I wanted to let you know that I've been struggling with cognitive energy, focus and sleep disturbances since moving into a windowless office [in late April]. ... I was diagnosed with Seasonal Affective Disorder (biological sensitivity to diminished environmental light) at the age of 15, which is why I now live in Denver.
> ... I've ascertained that my current windowless office is not allowing me to fully maximize my potential at work ... Is there any way that I could request an office change to 304 - the unused adjunct space on this floor - or another possible space with a door and window.

At the end of the email, Mr. Gerig provided a link to article in *Psychology Today* that explained the Disorder.

It is clear that Mr. Gerig's supervisors did not take Mr. Gerig's request for an accommodation seriously. Mr. Cuthbert, for example, sent a copy of the request to his wife (who had no involvement with DU or Daniels) with a notation that stated: "Some of the things I deal with at work," followed by a smiley face emoji. And it is equally clear that after the accommodation request, the Supervisors decided they did not want Mr. Gerig to continue working for them. For the next four months, the Supervisors gave Mr. Gerig poor reviews and harassed and retaliated against him at every turn. To give just a few examples:

- On August 28, 2017, Mr. Gerig met with the Supervisors, ostensibly to discuss his request for an accommodation. Although the request was discussed briefly, the Supervisors used the opportunity to criticize Mr. Gerig for numerous alleged failings (such as being "insufficiently curious").

- On an almost weekly basis, the Supervisors would hand Mr. Gerig specific emails and documents that, changed his job performance duties and expectations. Additionally, Ms. Johnson asked Mr. Gerig repeatedly if he had thought carefully about whether or not [he] should be doing this work.

- On or about September 11, 2017, Mr. Gerig's request for an office with an external window, a simple accommodation, was officially denied. The reason given was because of the supposed possibility that it might generate feelings of separation from the team.

- Mr. Gerig was supposed to receive his annual review in August 2017, but it was not given to him until early October 2017. The belated review was very negative. He was given an Improvement Required rating.

- On October 6, 2017, at a meeting with the Supervisors, Mr. Gerig complained about retaliation. When Mr. Cuthbert requested examples, Mr. Gerig gave him several including: his poor performance review; a denial of his reasonable office change request; not being permitted to attend Corporate Partners meetings any longer; not being allowed to attend the annual CMED conference in November; and not being allowed to complete his Team-Building event planning commitments to the Executive Education team. Mr. Cuthbert responded that he could see how the events Mr. Gerig described "would feel like retaliation. Indeed, Mr. Cuthbert did not deny that the events were in fact retaliatory, and he did not offer to take steps to stop the retaliation

- After Mr. Gerig submitted Physician Questionnaire documents to the Human Resources Department, documenting the Disorder, HR spoke with Ms. Johnson who still refused to grant the requested accommodation.

- On November 13, 2017, four months after Mr. Gerig first requested a reasonable accommodation – an office with an external window – his request was finally granted and he was permitted to move to the vacant office he had requested.

- Three days later, Mr. Gerig was called into a surprise meeting with the Supervisors. At that meeting, Mr. Gerig was told by Mr. Cuthbert that he did not think Mr. Gerig's job was a good fit for him. When Mr. Gerig refused to resign, the Supervisors threatened Mr. Gerig with termination in January 2018. Alternatively, the Supervisors proposed that Mr. Gerig take a "buy out" through HR to leave immediately but be paid through Dec. 2017. Mr. Gerig declined the proposed buyout.

- On January 2, 2018, the Supervisors fired Mr. Gerig. His firing was discriminatory and retaliatory, in violation of the ADA.

B. *Defendant's Defenses to Plaintiff's Claims:*

DU denies that it discriminated against Plaintiff on the basis of disability or any other status protected under any federal, state, or local law, and denies that it retaliated against Plaintiff. To the contrary, DU made substantial efforts to accommodate Plaintiff's needs based on his report that he suffered from SAD. On August 18, 2017, Plaintiff informed his supervisors for the first time that he suffered from SAD and requested an accommodation. Plaintiff and his supervisors engaged in the interactive process to discuss his alleged limitations and potential accommodations. After being offered numerous options, including reassignment to a desk which faced large external windows, use of a sun lamp (an option that was suggested by Plaintiff himself due to the fact that he effectively used a sun lamp at home), use of the conference room (with external windows) and other offices (with external windows) anytime when not in use, and the option to take frequent breaks to spend time outside, Plaintiff elected the sun lamp option. Plaintiff's supervisors promptly purchased the sun lamp that Plaintiff selected and permitted him to use conference rooms and offices with external windows when available and gave him the option to take breaks outside whenever Plaintiff needed. When Plaintiff's supervisors later learned that these options had not been satisfactory to Plaintiff, Plaintiff's supervisors permitted him to relocate to an office with external windows even though that office was located outside the department's office suite. DU made every reasonable effort

to engage with Plaintiff regarding his alleged disability and provided him with numerous accommodations.

The discipline and coaching that ultimately led to Plaintiff's termination were completely unrelated to Plaintiff's disability and requests for accommodation. From an early time in his role as Program Developer, Plaintiff displayed performance deficiencies. When these deficiencies did not improve over time with training and coaching, Plaintiff expressed to his supervisor, Kelsey Johnson, that he did not feel successful in the role and that he had begun seeking other positions within DU. Plaintiff was not meeting the objective standards set by his supervisors for business development, outreach, and project proposals. He even failed to follow express directives from his supervisors. These failures were communicated to Plaintiff verbally on a regular basis (before and after he notified his supervisors of his SAD) and in a series of written warnings, including a designation of "Improvement Required" in his annual review. Despite these warnings, Plaintiff's performance, both in terms of quantity and quality, did not improve, leading to his termination on January 2, 2018.

In addition, DU asserts the following affirmative defenses:

1. Plaintiff has failed to state a claim or claims upon which relief can be granted.
2. DU did not engage in any discriminatory or retaliatory actions against Plaintiff.
3. The actions taken by DU to discipline and terminate Plaintiff were motivated by non-discriminatory, non-retaliatory reasons.
4. DU proceeded in good faith in regard to all disciplinary actions taken against Plaintiff.

5. Plaintiff was employed at-will, and DU had the right to terminate his employment at any time for any reason.
6. DU made good faith efforts to reasonably accommodate Plaintiff and in fact provided more than one reasonable accommodation to Plaintiff.
7. DU met all of its legal obligations to engage in an interactive process with Plaintiff to identify reasonable accommodations.
8. Plaintiff's claims are barred to the extent he did not engage in the interactive process. DU was not legally required to provide the specific accommodation requested by Plaintiff because there was an alternative accommodation that was less costly, less disruptive or easier to provide.
9. To the extent that Plaintiff suffered any damages, Plaintiff failed to mitigate or avoid the damages complained of.

## 4. STIPULATIONS

The following facts are undisputed:

1. Mr. Gerig is a Colorado resident who resides in Arapahoe County, Colorado. Mr. Gerig was employed as a full-time employee by DU from February 2013 to January 2, 2018. (Answer at ¶ 11).
2. In July 2016, Mr. Gerig took a new job doing business and program development at the Daniels College of Business ("Daniels"). Mr. Gerig was initially given an office with an external window. (*Id.* at ¶ 14).

3. In April 2017, as part of an office suite relocation for the Executive Education Program at DU, Mr. Gerig was moved to an office without any external windows. (*Id.*)

4. On or about December 6, 2017, Mr. Gerig was issued a Final Written Warning regarding his performance. (Answer at ¶ 50).

5. Mr. Gerig's employment was terminated on January 2, 2018. (Depo. Ex. 19).

## 5. PENDING MOTIONS

There are no motions currently pending. Defendant intends to file a motion for summary judgment.

## 6. WITNESSES

a. Non-expert Witnesses

1. See Plaintiff's Witness List attached hereto.

2. See Defendant's Witness List attached hereto.

b. Expert Witnesses

1. See Plaintiff's Witness List attached hereto.

## 7. EXHIBITS

a. Exhibits

1. See Plaintiff's Exhibit List attached hereto.

2. See Defendant's Exhibit List attached hereto.

## 8. DISCOVERY

Discovery is ongoing in this case.

## 9. SPECIAL ISSUES

None.

## 10. SETTLEMENT

a. On June 2, 2020, this Court granted the Parties leave to file a Supplemental Joint Status Report (the "Report") as to the Parties' settlement efforts and ordered that the Parties file the Report on or before September 30, 2020.

b. The Parties intend to revisit the issue of settlement after all depositions are completed, at which time the Parties will have a more thorough understanding of the claims, defenses, and alleged damages, and the settlement value of this case. The Parties will file the Report on or before September 30, 2020.

c. Counsel for the parties and any *pro se* party considered ADR in accordance with D.C.COLO.LCivR.16.6.

## 11. OFFER OF JUDGMENT

Counsel for the parties acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure. Counsel have discussed it with the clients against whom claims are made in this case.

## 13. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice. The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order. In

the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

**13. TRIAL AND ESTIMATED TRIAL TIME;**
**FURTHER TRIAL PREPARATION PROCEEDINGS**

1. The trial will be before a jury.
2. Anticipated length of trial: five days,
3. Trial shall be held on a date not yet determined at 9:00am in Courtroom A401, Fourth Floor, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.
4. Any other orders pertinent to the trial proceedings: None.

DATED this 14th day of September, 2020.

BY THE COURT

Honorable Kristen L. Mix
United States Magistrate Judge

APPROVED:

*/s/ Jeanine M. Anderson*
Jeanine M. Anderson, Esq.
Richard P. Barkley, Esq.
Anderson Barkley, LLC
3900 E. Mexico Ave., Suite 300
Denver, Colorado 80210
richard@andersonbarkleylaw.com

*/s/ E. Rayner Mangum*
E. Rayner Mangum
Jim Goh
Constangy, Brooks, Smith and Prophete LLP.
600 17th Street, Suite 2700s
Denver, CO 80202
jgoh@constangy.com

| | |
|---|---|
| jeanine@andersonbarkleylaw.com | rmangum@constangy.com |
| Attorneys for Plaintiff | Attorneys for Defendant |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of September, 2020, a true and correct copy of the foregoing was served via the CM/ECF system on:

Jim Goh
E. Rayner Mangum
Constangy, Brooks, Smith & Prophete, LLP
600 17th Street, Suite 2700S
Denver, Colorado 80202
jgoh@constangy.com
rmangum@constangy.com

*Attorneys for the Defendant*

*s/ Jeanine M. Anderson*
Jeanine M. Anderson